(165 App. Div. 552)

## In re LOWN.

(Supreme Court, Appellate Division, Third Department.　January 6, 1915.)

1. EXECUTORS AND ADMINISTRATORS (§ 294*)—DEBTS DUE DECEASED—INTEREST.

Where a father lent money to his children, and provided that the sums advanced should, with fixed interest, be deducted from their shares, the father's executors cannot charge a higher rate of interest than he fixed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1169–1184; Dec. Dig. § 294.*]

2. EVIDENCE (§ 269*)—DEMANDS DUE ESTATE.

Where a father lent money to his children, his account books, declaring that 4 per cent. interest should be charged, as well as a revoked will which provided that from the share of each child the advances, with interest at 4 per cent., should be deducted, are admissible to show the father's intention as to the rate of interest.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1063–1067; Dec. Dig. § 269.*]

3. EXECUTORS AND ADMINISTRATORS (§ 294*)—AGREEMENT AMONG HEIRS—VALIDITY.

Where the children and heirs of deceased agreed that advances to any of them should be deducted from their share, and a son and daughter thereafter induced the deceased to make a new will dividing the estate equally between the heirs, the agreement may be enforced by the daughter, who had received no advances, against the son, who had received advances, though another child did not sign the agreement; it appearing that he thereafter ratified it, for the daughter evidently relied on the agreement, or she would not have joined in procuring a will equally dividing the property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1169–1184; Dec. Dig. § 294.*]

4. EXECUTORS AND ADMINISTRATORS (§ 494*)—ALLOWANCE—RIGHT TO.

Where the children of the deceased induced him, a few days before his death, to execute a new will, but the validity of the old will was practically recognized by the payment of legacies therein provided for, one named executor by the old will, who aided the executor of the last will, is entitled to an allowance, there being no real antagonism between them.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2084–2087; Dec. Dig. § 494.*]

Appeal from Surrogate's Court, Ulster County.

Final accounting by Frank B. Lown, as executor of Charles H. Roberts, deceased, to which objections were filed by Frances Roberts and others of the heirs. From the decree, all of the children of the deceased appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Selden Bacon, of New York City, for Thornton D. Roberts.

John B. Grubb, of Poughkeepsie, for Irving B. Roberts, Fidelity & Deposit Co. of Maryland, and United Surety Co. of Maryland.

Stewart & Shearer, of New York City, for United States Trust Co., as executor.

Howard Chipp, of Kingston, for Frances P. Roberts.

Harry C. Barker, of Poughkeepsie, for F. B. Lown, as executor.

SMITH, P. J.   Charles H. Roberts died February 11, 1909, leaving a widow and six children.   Prior to his death, and upon January 26, 1909, he executed a last will and testament, which divided his property equally among his widow and children.   Prior to that time, and upon September 25, 1895, the said Charles H. Roberts had made another will, by which he had given about $50,000 to certain relatives in the West, and had given his wife a life estate in his remaining property, with remainder to his six children.   To this will were added at different times four codicils; the last one being dated November 19, 1906.   The will of 1895 and all of these codicils were holographic.   It seems that to certain of his children he had loaned moneys, and had taken notes therefor, and to others of his children he had advanced moneys without taking notes therefor.   But all these moneys, whether notes had been taken therefor or not, had been charged against the child to whom the advancement or loan had been made upon intestate's daybook.   In about 1906, and prior thereto, he appears to have lumped the amount that was owing to him from his children, and in his book it was stated that thereafter they should pay interest at 4 per cent. per annum; and in the codicil to his will, made in 1906, he provided that these debts should be accounted for in the distribution of his estate, and that 4 per cent. interest should be charged thereon.   Prior to the death of the said Roberts, and prior to the making of the last will, the widow had signed an agreement that upon the death of her husband she would take absolutely her one-seventh interest in the estate, and release to the other heirs the remaining interest.   Further, in the fall of 1908, all of the children, except Irving Roberts, signed a paper, which reads as follows:

"We, the undersigned, agree that any moneys we owe C. H. Roberts or any moneys he has advanced us shall be charged to our share of his estate and taken out of it."

There is some evidence that at some time there was a provision below this agreement to the effect that the agreement should not be valid unless signed by all of the children.   This was claimed to have been upon the agreement when Thornton Roberts, one of these appellants, signed it.   Irving Roberts never did in fact sign the agreement; but it is stated by the surrogate that in open court he ratified the agreement, and he does not appear here contesting his obligation thereunder.   After the death of said Charles H. Roberts, and upon June 22, 1910, an agreement was made purporting to be signed by all of the heirs, one part of which only is material to this controversy.   That part of the agreement reads:

"That they and each of them will pay to the executors of the last will and testament of Charles H. Roberts, deceased, all moneys borrowed by or advanced to them by Charles H. Roberts during his lifetime, and interest thereon, that in the judgment of Frank B. Lown is due and owing to the estate of Charles H. Roberts, deceased."

Frank B. Lown was the named executor who is here accounting. That agreement was signed by the different children, but Thornton D. Roberts' name was put upon it by Charles Roberts, who claimed to

have been authorized to sign the same. The learned surrogate has found that he did have such authority.

[1, 2] In the accounting Frank B. Lown charged the different children with the amounts which appeared upon the books of Charles H. Roberts to have been advanced to them or loaned to them, with interest at 4 per cent. from November 19, 1906. That interest item is challenged by the appeal of Frances Roberts, to whom no moneys had been advanced or loaned. The claim of her counsel upon this appeal is that interest should have been charged at 6 per cent. upon these advances and this indebtedness of the other children, unless it was otherwise stated in the obligations which had been given for part of the debts. Charles H. Roberts had a clear right to loan his moneys at 4 per cent., or to advance them to his children with provision that in the settlement of the estate they should be charged with such advances with 4 per cent. interest, and if the estate of Charles H. Roberts were seeking to collect these moneys of these children his declaration in his account books that they should bear only 4 per cent. would be evidence of his intention and of the agreement of the parties that that should be the lawful rate that could be charged on those moneys in the settlement of the estate. While the fourth codicil of the will of 1895 was revoked by the will of 1909, nevertheless it is evidence of an intent, in connection with intestate's daybook, to charge only 4 per cent. upon these obligations and upon these advances. Such intent as thus shown is conclusive upon the executor, and he could not have charged in excess thereof, and the decree approving of this charge of interest should be affirmed.

[3] The main contention upon the appeal of Thornton Roberts is that he should not be charged with $16,000, which appears upon the books of his father to have been advanced to him. It seems to me clear that he may be charged therefor upon the agreement made in the fall of 1908.

These parties were dissatisfied with their father's will, perhaps in part because part of the estate went to Western heirs; in any event, because the property was not willed to them direct, but only after the life estate of their mother. The surrogate has found that they combined to procure another will from their father, which was procured 17 days before his death, which divided the property equally. Both Thornton and Frances Roberts participated in this scheme, and were largely instrumental in procuring the new will. Thornton Roberts himself wrote out the new will upon the typewriter. Frances Roberts never would have made that arrangement without the assumed existence of some agreement whereby these advances should be charged against these other heirs. She, having had nothing, was in good conscience entitled to a greater sum than those who had been favored by moneys advanced by the father with the intention that they should account for the same upon the settlement of his estate. Thornton Roberts must have known that Frances Roberts relied upon this agreement when she assisted him to procure the signature of this new will, and equity and fair dealing will now estop him from claiming that he was not obligated under that agreement, which is the only way where-

by; in the execution of this new will, Frances Roberts could be protected in her equitable rights to that estate. It does not appear that Irving Roberts ever refused to sign the paper. It is stated by the surrogate that he ratified it in open court. His delay in thus assenting has in no way harmed Thornton. So that equitably Thornton Roberts must be held to have been a party to that agreement, and that agreement must be held to be binding upon him.

[4] Other objections are made to the decree, which call for little discussion. An objection is made to an allowance to one Harry C. Barker, who did some work for the executor, but was also representing the executor in the former will, whose interests are claimed to have been antagonistic to this executor. But that antagonism was imaginary, and not real. The parties practically admitted the just claims of these Western heirs, and they were paid 80 per cent. of the amount of their legacies, and the claim of this executor, represented by Barker, for his commissions, was recognized, and settlement was made with him therefor. It does not appear that the said Barker was at any time acting in any double position, or that he was asked to do any work wherein his interest in the litigation would at all prejudice the rights of the beneficiaries under the last will. The allowance to him, therefore, representing substantial work for the estate, must necessarily have been approved. These views render unnecessary the determination of the binding force of the agreement between the heirs, made in the fall of 1908, apart from the force to be given thereto in the procurement by Frances and Thornton of the will of 1909. They also render unnecessary the determination as to the validity of the agreement, made after the death of Charles H. Roberts, to which Thornton's name was signed by his brother. That agreement was unquestionably valid in part. It is only challenged in so far as it allows Thornton to be charged with the $16,000 charged to him upon his father's daybook. We have carefully considered the other objections made to the decree, and find no error therein which calls for its reversal.

The decree should therefore be affirmed, with costs to the executor, payable out of the estate. All concur.